UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **AMERICAN PAVEMENT SPECIALISTS, LLC,** : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> **BOOCA PAVING, LLC,** : <br> : <br> Defendant. : | Civil Action No.: 3:25-cv-01413 <br><br><br> September 2, 2025 |

## COMPLAINT

### INTRODUCTION

1. This is an action by American Pavement Specialists, LLC ("APS" or "Plaintiff") to recover damages arising from infringement of APS's intellectual property, including its trade dress, by defendant Booca Paving, LLC ("Booca" or "Defendant"), and to permanently enjoin Defendant's future infringement. Defendant is actively engaged in the wholesale copying, mimicking, impersonation and theft of APS's image and brand, unfair competition, and unfair or deceptive trade practices, among other things. APS asserts claims for trademark infringement, trade dress infringement, unfair competition, violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), unjust enrichment and tortious interference.

### THE PARTIES

2. Plaintiff APS is a nationally known company and brand based in Danbury, Connecticut. For over 30 years, APS has provided paving, milling, reclamation and stripping, and fine grade services in Connecticut and in interstate commerce. APS promotes its brand and services nationally, has been featured in numerous publications, and has hundreds of thousands of social media followers across numerous platforms.

3. Upon information and belief, Defendant is a local business based in Woodbury, Connecticut, which provides residential and commercial paving services.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over APS's claims for trademark/trade dress infringement and related claims pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a), and 28 U.S.C. § 1367.

5. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b) because Defendant operates and does business in the District and because a substantial part of the events giving rise to APS's claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS

6. APS began its business in 1993. Over the last 32 years, APS has grown from providing pavement services throughout the tri-state area into a national brand, with a stellar national reputation and a distinctive, unique and recognizable national image.

7. APS has hundreds of thousands of followers across a variety of social media platforms.

8. APS and its principals are regularly sought out for national speaking engagements, construction magazines, podcasts, and to collaborate with other industry influencers. APS is often featured at the national "World of Asphalt" convention and show.

9. APS and/or its principals have done speaking engagements and collaborated with other national brands, including Leeboy, John Deere, Mauldin, Trout River, and Bagela. APS has even worked with international brands, such as Shouldermaster, using APS's achievements and notoriety to help bring international products to the United States. In many instances, APS receives royalties from third parties for brand collaboration.

10. On May 18, 2021, APS registered the following stylized trademark with the U.S. Patent and Trademark Office:



U.S. Reg. No. 6,351,553 (the "Logo Mark").

11. As seen above, the Logo Mark consists of red background with yellow lettering "American Pavement Specialists" containing black letter shadowing and a black road with yellow center line behind "American Pavement Specialists" lettering.  The color(s) Red, Yellow and Black are claimed as a feature of the mark.

12. APS uses the Logo Mark in connection with, among other things, paving contractor services.  The Logo Mark has been used in commerce since at least as early as January 1, 1998.

13. APS has also grown its brand and image in large part through the distinctive trade dress and branding of its trucks, equipment and business components.

14. APS uses unique and inherently distinctive trade dress in conjunction with the services it offers in interstate commerce.  Among other things, APS uses unique coloring and styling for its trucks, and displays its branding and other lettering in specific locations and stylistic ways.

15. For example: APS utilizes (a) specific, reflective logo lettering for all of its trucks and equipment; (b) a "shaved" look for its trucks and equipment, such that everything is completely flush and nothing "sticks up"; (c) certain polished stainless steel

or polished aluminum for its trucks and equipment; (d) certain LED lighting; (e) no sideboards on its trucks, replaced with tapered steel; (f) a full size logo on flush dump truck sides; (g) custom, "Viper red" paint on its trailers; (h) polished aluminum wheels on its trailers; (i) "Race red" paint on its utility/tool trucks; (j) polished aluminum flatbeds on its utility/tool trucks; (k) all polished stainless steel job boxes; (l) polished stainless-steel wheels; and (m) sleek, shaved utility beds, ensuring nothing "sticks up."  (Collectively, these are referred to as APS's "Select Customizations.")

16. The style of APS's trucks, equipment and other business components form a unique and distinctive trade dress proprietary to APS (collectively, the "Trade Dress").

17. APS has devoted considerable time and expense to maintaining and promoting this Trade Dress, its Logo Mark, its brand and the quality for which they stand.

## DEFENDANT'S INFRINGEMENT

18. Beginning at a time unknown and continuing to the present, Defendant has actively engaged in the illegal and unlawful business of mimicking and copying APS's Trade Dress and branding for unlawful, confusing, fraudulent and/or deceitful purposes.

19. For example, Defendant has copied *all* of APS's Select Customizations, which APS uses (a) for style and branding purposes, (b) to stand out, and (c) specifically to be *unique*, all at extensive cost to APS.  All of Defendant's infringing acts, including, but not necessarily limited to, the foregoing, are referred to, collectively, as Defendant's "Infringing Acts."

20. Defendant has engaged in the Infringing Acts for the purpose of trading and capitalizing on APS's goodwill and reputation.

21. APS has information, and based on that information alleges, that Defendant *intentionally* engaged in the Infringing Acts, and enlisted others to assist in the Infringing Acts, for the very purpose of confusing customers, prospective customers and the public.

22. Among other things, Defendant visited APS's designers and other vendors and insisted that those vendors duplicate the accessories and services the vendors had provided to APS in order procure trucks and equipment identical to those of APS.

23. For example, one of APS's truck dealers informed APS that Defendant contacted that dealer and asked for a dump truck identical to APS's dump truck, including at least 20 custom features that APS has designed itself and asked the dealer to install.

24. Defendant then brought those trucks to APS's sign company and asked that company to install lettering identical to that used by APS.

25. More recently, APS learned that Defendant is now customizing its personal work vehicles to mirror APS's customized pickup trucks, and has similarly developed an identical tool truck.

26. Defendant has also attempted to copy and use certain aspects of APS's Logo Mark, using the following:





27. While the name of the company is different, the *style* of Defendant's logo is confusingly similar to APS's registered Logo Mark. Specifically, Defendant's logo "consists of red background with yellow lettering … containing black letter shadowing and a … road with … behind [the] lettering," which are all elements of APS's federal registration.

28. Notably, "[t]he color(s) Red, Yellow and Black is/are claimed as a feature of [APS's Logo Mark]" and Defendant uses all of those elements in its infringing branding.

29. Here is a depiction of one of APS's trucks and one of Defendant's truck's side-by-side:




30. Upon information and belief, Defendant actively *seeks* to be *confused* with APS in the marketplace, likely hoping to be retained by those who believe they are hiring APS, or that they are hiring some company endorsed, sponsored or affiliated with APS.

31. APS has documented confusion by the public and in the marketplace. For example, customers and prospective customers have stated to principals of APS, in sum or substance, "I saw your guys and your trucks doing that job at location X." However, in many instances, it was in fact *Defendant* providing services at the referenced location. Moreover, when obtaining supplies from third-party vendors, those vendors have acknowledged that Defendant's confusingly similar equipment creates concerns about providing the wrong supplies to the wrong party.

32. APS prides itself on providing top tier services in the industries in which it operates. APS is at great risk that Defendant's services will be mistaken for APS's services, and APS's reputation will suffer from Defendant's quality and services being attributed to APS.

## COUNT I

### Trademark Infringement, 15 U.S.C. § 1114, et seq.

33. APS repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 32, inclusive.

34. Defendant has infringed APS's federally registered Logo Mark in violation of the Lanham Act, including, but not limited to, 15 U.S.C. § 1114(1).

35. Because APS advertises and markets its services under, among others, the Logo Mark described in this Complaint, this mark is a means by which APS's services are distinguished from the services of others in the same field or related fields.

36. Because of APS's long, continuous, and exclusive use of the Logo Mark, it has come to mean, and is understood by customers, prospective customers, and the public to signify, products or services of APS.

37. Defendant has wrongfully attempted to capitalize on APS's successful branding. In addition to, and in conjunction with, the Trade Dress infringement described elsewhere, Defendant has adopted a logo that uses the registered elements of APS's Logo Mark and then affixed that confusingly similar and infringing logo to trucks and equipment that also infringe APS's Trade Dress. Defendant's actions are likely to cause confusion, mistake, or deception as to the source, origin, or authenticity of the equipment and services at issue.

38. Defendant's activities are likely to lead the public to conclude, incorrectly, that Defendant's services originate with, or are authorized, sponsored or endorsed by, APS, to the damage and harm of APS and the public.

39. Defendant has engaged in the actions described herein with the willful and calculated purposes of (a) misleading, deceiving, or confusing customers and the public as to the origin and authenticity of the infringing services, and (b) trading upon APS's business reputation and goodwill.  At a minimum, Defendant acted with willful blindness to and in reckless disregard of APS's trademark rights.

40. As a result of its wrongful conduct, Defendant is liable to APS for trademark infringement.  APS has suffered, and will continue to suffer, substantial losses, including, but not limited to, damage to its business reputation and goodwill.  APS is entitled to recover damages, which include its losses and all profits Defendant has made as a result of its wrongful conduct, pursuant to 15 U.S.C. § 1117(a).

41. Alternatively, APS is entitled to statutory damages pursuant to 15 U.S.C. § 1117(c).  In addition, because Defendant's infringement of APS's trademark rights was willful, within the meaning of the Lanham Trademark Act, the award of damages and profits should be trebled pursuant to 15 U.S.C. § 1117(b).

42. APS is also entitled to recover its attorney's fees and costs of suit pursuant to 15 U.S.C. § 1117.

43. Pursuant to 15 U.S.C. §§ 1116 and 1118 and/or other applicable law, APS is further entitled to injunctive relief enjoining Defendant's wrongful conduct, and an order impounding all counterfeit and/or infringing articles.

## COUNT II

### Trade Dress Infringement, 15 U.S.C. § 1125, *et seq.*

44. APS repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 43, inclusive.

45. In its business (as described further in this Complaint), APS uses unique Trade Dress, including size, shape, color, textures, graphics, style and/or design, which customers and the public recognize as a source identifier.  The total image of APS's

equipment, marketing and business signifies to the public that the services at issue derive from and/or are sponsored or endorsed by APS.

46. APS's Trade Dress is nonfunctional and/or contains numerous nonfunctional elements.

47. APS's Trade Dress is inherently distinctive and/or has acquired secondary meaning.

48. Defendant has willfully copied APS's total image and APS's Trade Dress, including both functional and nonfunctional elements.

49. Defendant's conduct was intentional and malicious. Among other things, Defendant enlisted the help of vendors and specifically sought to copy exactly APS's equipment and branding, so as to appear identical to and/or to be confused with APS.

50. There has been confusion and/or there is a substantial likelihood of confusion between APS's equipment, business and services and those of Defendant.

51. APS's Trade Dress is a means by which APS's services are distinguished from the services of others in the same field or related fields.

52. Because of APS's long, continuous, and exclusive use of its branding and Trade Dress, they have come to mean, and are understood by customers and the public to signify, the services of APS.

53. Defendant's wrongful conduct has caused monetary and irreparable damage to APS and is likely to continue unless restrained and enjoined.

54. As a result of Defendant's wrongful conduct, APS has suffered and will continue to suffer substantial losses, including, but not limited to, damage to its business reputation and goodwill.

## COUNT III

### False Designation of Origin/False Advertising, 15 U.S.C. § 1125, *et seq.*

55. APS repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 54, inclusive.

56. APS's trademarks, including Trade Dress, are the means by which APS is distinguished from the products and/or services of others, including competitors, in the same field or related fields.

57. Because of APS's long, continuous, and exclusive use of its trademarks, including its Trade Dress, they have come to mean, and are understood by customers and the public to signify products and/or services derived from, or sponsored or endorsed by, APS.

58. APS uses various branding concepts, including distinctive and aesthetically pleasing displays, features, styles, and packaging (collectively, "APS visual designs") for its services.

59. Defendant's wrongful conduct includes the use, advertising, marketing, offering, or distribution of APS's Trade Dress and APS visual designs.

60. Defendant engaged in such wrongful conduct with the willful purpose of (a) misleading, deceiving, or confusing customers and the public as to the origin and authenticity of the goods and/or services offered, marketed or distributed by Defendant through imitation visual designs, and (b) trading upon APS's business reputation and goodwill.

61. Defendant's conduct constitutes (a) false designation of origin, (b) false or misleading description, and/or (c) false or misleading representation that Defendant's services originate from or are authorized by APS, all in violation of § 43(a) of the Lanham Trademark Act, set forth at 15 U.S.C. § 1125(a).

62. Defendant's wrongful conduct has caused monetary and irreparable damage to APS and is likely to continue unless restrained and enjoined.

63. As a result of Defendant's wrongful conduct, APS has suffered and will continue to suffer substantial losses, including, but not limited to, damage to its business reputation and goodwill.

## COUNT IV

### Unfair Competition

64. APS repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 63, inclusive.

65. Defendant, without the consent of APS, used in commerce a reproduction, copy or colorable imitation of APS's branding and Trade Dress, in connection with the sale or distribution of goods or services.

66. Such use by Defendant is likely to cause confusion in the marketplace.

67. Defendant's conduct constitutes unfair competition under the common law of Connecticut and/or other applicable law.

68. Defendant's unfair competition has caused monetary and irreparable damage to APS and is likely to continue unless restrained and enjoined.

69. As a result of Defendant's unfair competition, APS has suffered and will continue to suffer substantial losses, including, but not limited to, damage to its business reputation and goodwill.

## COUNT V

### Connecticut Unfair Trade Practices Act ("CUTPA")

70. APS repeats and incorporates by this reference each and every allegation as set forth in paragraphs 1 through 69, inclusive.

71. Defendant is a "person" within the meaning of Conn. Gen. Stat. § 42-110a.

72. With respect to the foregoing acts and conduct, Defendant was engaged in the conduct of trade or commerce, as those terms are defined in the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a, *et seq*.

73. The foregoing conduct by Defendant constitutes unfair methods of competition, deceptive acts or practices in the conduct of a trade or commerce, and/or unfair acts or practices in the conduct of a trade or commerce, in violation of CUTPA, in that such conduct is offensive to public policy, egregious, unconscionable, immoral, unethical, oppressive, deceptive and/or unscrupulous, and has caused, and may continue to cause, substantial injury to APS, in addition to consumers and/or others.

74. The foregoing conduct of Defendant has caused, and in the future will continue to cause, ascertainable loss to APS.

75. A copy of this Complaint has been e-mailed to the Attorney General of the State of Connecticut via CUTPA@ct.gov.

## COUNT VI
### Unjust Enrichment

76. APS repeats and incorporates by this reference each and every allegation as set forth in paragraphs 1 through 75, inclusive.

77. As a result of the wrongful conduct alleged herein, Defendant has been and will be unjustly enriched at the expense of APS. Among other things, Defendant has unjustly reaped the benefits of the association *APS* has built between its Trade Dress / branding and its unrivaled services and nationally-recognized reputation -- an association developed and grown at great expense to APS -- without Defendant having to develop the expertise or incur the expense of developing its own reputation and goodwill. Rather, Defendant simply attempts to mimic APS's Trade Dress and branding and piggyback on APS's reputation as a result.

78. Defendant's retention of these benefits was and is without justification and constitutes unjust enrichment.

79. Defendant should be required to disgorge and turn over to APS the gain that Defendant illegally and wrongfully obtained at the expense of APS, and a constructive trust should be imposed thereon. The amount of this unjust enrichment cannot be stated with certainty at the present time but can be further developed through discovery.

80. APS lacks an adequate remedy at law for such conduct and is entitled, among other relief, to recover these benefits from Defendant, in an amount to be proven at trial, and/or to an injunction restraining Defendant from further unjust enrichment.

## COUNT VII

### Tortious Interference with Business Relations and/or Prospective Economic Advantage

81. APS repeats and incorporates by this reference each and every allegation as set forth in paragraphs 1 through 80, inclusive.

82. APS has business relations with one or more third parties, and, through its investment and efforts, has prospects for certain economic advantages.

83. Through the Infringing Acts, Defendant has interfered with those business relations and prospective economic advantages.

84. Defendant acted for a wrongful purpose and/or used dishonest, unfair, or improper means in engaging in the Infringing Acts.

85. Defendant's acts injured APS's relationships with its customers and prospective customers.

86. APS is entitled to monetary damages and/or injunctive relief arising out of Defendant's tortious interference.

## **PRAYER FOR RELIEF**

WHEREFORE, APS respectfully requests judgment as follows:

1. That the Court enter a judgment against Defendant finding that Defendant has:

    a) willfully infringed APS's rights in its federally registered Logo Mark, in violation of 15 U.S.C. § 1114;

    b) willfully infringed APS's Trade Dress rights, and committed and is committing acts of false designation of origin, false or misleading description of fact, and/or false or misleading representation, to the harm of APS, in violation of 15 U.S.C. § 1125(a);

    c) Engaged in Unfair Competition;

    d) Violated CUTPA;

    e) Is liable for Unjust Enrichment;

    f) Tortiously Interfered with APS's business relations and/or prospective economic advantage; and

    g) otherwise injured the business reputation, goodwill and business of APS by the acts and conduct set forth in this Complaint.

2. That the Court issue permanent injunctive relief against Defendant, and that Defendant, its agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, be enjoined and restrained from:

    a) Violating the Lanham Act;

    b) Engaging in Unfair Competition;

    c) Violating CUTPA;

    d) Unjustly enriching itself at APS's expense;

   e) Tortiously interfering with APS's business relations and/or prospective economic advantage; and

   f) otherwise injuring the business reputation, goodwill and business of APS.

  3. That the Court enter an order, pursuant to 15 U.S.C. § 1116(d)(1)(A) and 28 U.S.C. § 1651(a), and/or other applicable law, impounding all counterfeit and infringing trucks/equipment, items and/or things that infringe APS's Trade Dress, infringe APS's Logo Mark, and/or otherwise violate the Lanham Act and APS's rights;

  4. That the Court order Defendant to pay APS general, special, actual, and statutory damages, including the following:

   a) APS's damages and Defendant's profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b) for Defendant's willful violation of APS's registered Logo Mark, or alternatively, enhanced statutory damages pursuant to 15 U.S.C. § 1117(c) for Defendant's willful misuse of colorable copies of APS's registered trademark;

   b) All compensatory and other damages to which APS is entitled under the Lanham Act;

   c) All compensatory and other damages due to APS as a result of Defendant's unfair competition;

   d) All relief available to APS under CUTPA;

   e) Reimbursing APS for the amounts that Defendant has been unjustly enriched; and

   f) Damages arising out of Defendant's tortious interference.

  5. That the Court order Defendant to pay to APS appropriate punitive and/or exemplary damages;

6. That the Court order Defendant to pay to APS the costs of this action and the reasonable attorneys' fees incurred by APS in prosecuting this action and enforcing its rights;

7. That the Court order Defendant to pay to APS all available interest (including prejudgment and post-judgment interest); and

8. That the Court grant APS such other and additional relief as is just and proper.

Dated this 2nd day of September, 2025.

                THE PLAINTIFF
                AMERICAN PAVEMENT SPECIALISTS, LLC

By: /Gerald C. Pia, Jr./
    Brian C. Roche - ct 17975
    Gerald C. Pia, Jr. - ct 21296
    Roche Pia, LLC
    4 Research Dr., Suite 402, PMB # 543-85
    Shelton, CT 06484
    Phone: (203) 944-0235
    Fax: (203) 567-8033
    E-mail: broche@rochepia.com
            gpia@rochepia.com